

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

==================================================

JANE DOE,

      **Plaintiff,**

     -against-

HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD,
SAUDI OGER LTD d/b/a HARIRI
INTERESTS, and MUSTAPHA OUANES,

     **Defendants.**

==================================================X

**COMPLAINT**
Docket No.:

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff **JANE DOE**[1], by her attorneys **MORELLI ALTERS RATNER**, complaining of the Defendants herein, upon information and belief respectfully alleges as follows:

1.     Plaintiff **JANE DOE** is a resident of New Jersey and a full-time nursing student. During the time of the subject events, Plaintiff was a 26-year-old student living in Brooklyn, New York who supported herself and paid for school by working in Manhattan as a bartender.

2.     On or about January 26, 2010, Plaintiff **JANE DOE** was the victim of a heinous conspiracy perpetrated by the Defendants, **HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD** (hereinafter, "**PRINCE ABUDLAZIZ BIN FAHD**"), **SAUDI OGER LTD d/b/a HARIRI INTERESTS** (hereinafter, "**SAUDI OGER**") and **MUSTAPHA OUANES** that culminated in the brutal sexual assault, sodomy and repeated rape of Plaintiff **JANE DOE** at New York's venerable The Plaza Hotel, located on 5th Avenue at 59th Street in Manhattan.

3.     At all relevant times herein, Defendant **MUSTAPHA OUANES** was employed by Defendants **SAUDI OGER LTD d/b/a HARIRI INTERESTS** and by **HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD** in Manhattan to do the Saudi Prince's bidding. At the

---

[1]  Due to the nature of this matter, Plaintiff's name is omitted to protect her privacy.

time of the subject events, Defendant **MUSTAPHA OUANES** was a 59-year-old, Algerian-born, married resident of Saudi Arabia living temporarily in New York, New York in one of the 50 rooms on the 5th floor of The Plaza Hotel reserved for **HRH PRINCE ABDULAZIZ BIN FAHD** and his travelling entourage.   Defendant **MUSTAPHA OANUES** is presently incarcerated in New York serving a 10-year-sentence as a consequence of the events set forth herein.

4.     At all times relevant herein, Defendant **MUSTAPHA OANES**' duties as a trained mechanical engineer and an employee of Defendants **SAUDI OGER** and **PRINCE ABDULAZIZ BIN FAHD** included ensuring that the climate of the floor inhabited by Defendant **PRINCE ABDULAZIZ BIN FAHD** at The Plaza Hotel was properly regulated.   Unfortunately, Defendant **MUSTAPHA OANES**' duties as a member of Defendant **SAUDI OGER**'s "VIP" Unit and as **PRINCE ABDULAZIZ BIN FAHD**'s personal assistant also included luring unsuspecting women to The Plaza Hotel in order to gratify the sexual pleasure of **HRH PRINCE ABDULAZIZ BIN FAHD** and/or that of his entourage, including but not limited to other employees of Defendant **SAUDI OGER.**

5.     At all times relevant herein, **SAUDI OGER LTD** was and remains a global corporation based in Saudi Arabia and one of the leading construction, facilities management, real estate development, and infrastructure project development providers in the world.   **SAUDI OGER** maintains offices and conducts business throughout the world, including in the United Kingdom, France, Switzerland, Jordan, The United Arab Emirates, Morocco, India, the Republic of the Philippines, and the United States, and employs thousands of individuals worldwide.

6.     At all times relevant herein, Defendant **MUSTAPHA OUANES** was employed by **SAUDI OGER**'s "VIP" unit, which existed for the purpose of travelling with and catering to the needs and desires of Defendant **HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD.**

7.       At all times relevant herein, Defendant **SAUDI OGER LTD d/b/a HARIRI INTERESTS** (hereinafter, "**SAUDI OGER**") was and remains a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Bethesda, Maryland.   At all relevant times herein, Defendant **SAUDI OGER** conducted business in New York.

8.       At all times relevant herein, Defendant **HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD** (hereinafter, "**PRINCE ABDULAZIZ BIN FAHD**") was and remains son of Saudi Arabia's late King Fahd bin Abdulaziz Al Saud ("King Fahd.")   At the time of his passing on or about August 1, 2005, King Fahd was the second wealthiest person in the world, possessing personal wealth of approximately $25 billion.   Upon his death in approximately August 2005, King Fahd's half-brother Abudallah bin Abdulaziz Al Saud succeeded to the throne and named his own half-brother, Sultan bin Abdulaziz, Crown Prince.   Throughout his life, **PRINCE ABDULAZIZ BIN FAHD** has had few if any official responsibilities for the Kingdom of Saudi Arabia.   At all relevant times herein, Defendant **PRINCE ABDULAZIZ BIN FAHD** was in New York on personal business rather than in any official capacity on behalf of the Kingdom of Saudi Arabia, and was not performing any governmental or official acts on behalf of his country.

9.       At all times relevant herein, Defendant **PRINCE ABDULAZIZ BIN FAHD** was a billionaire closely tied to Defendant **SAUDI OGER** and who owned at least approximately $1 billion worth of property in the United States.   At all relevant times herein, Defendant **PRINCE ABDULAZIZ BIN FAHD** was a citizen of Saudi Arabia residing temporarily in his 4000 square foot fourth floor suite at The Plaza Hotel in Manhattan.   At all times relevant herein, The Plaza Hotel was owned in part by Defendant **PRINCE ABDULAZIZ BIN FAHD**'s cousin, HRH

Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, Chairman of Saudi Arabia's Kingdom Holding Company.

10.     At all times material to this Complaint, the individual officers, directors, executives, managers, supervisors, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, executives, managers, supervisors, employees and/or agents of Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER**.

11.     Jurisdiction of the subject matter of this action is established in this Court under Title 28 of the United States Code, Section 1332 (diversity), and the amount in controversy exceeds the jurisdictional requisite.   In addition, jurisdiction over Defendant Prince Abdulazia Bin Fahd lies under the Tort Exception to the Foreign Sovereign Immunities Act, Title 28 of the United States Code, Section 1605(a)(5) in that Plaintiff's personal injuries were caused by the foreign sovereign's tortious acts.   This is the proper venue for this action in that the unlawful acts alleged herein were committed within this Court's jurisdiction.

## GENERAL ALLEGATIONS OF NEGLIGENCE, SEXUAL HARASSMENT AND ABUSE

12.     This lawsuit arises out of an ongoing wrongful scheme by Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER LTD** to harass and abuse women.   Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER** knew or should have known of Defendant **MUSTAPHA OUANES'** predisposition to abusing women, his violent propensities, and his sexual harassment of women.   A reasonable background check would have revealed the same.   Nevertheless, Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER LTD** hired Defendant **MUSTAPHA OUANES** to work in **SAUDI OGER'S** elite "VIP" unit, the

division employed exclusively by Defendant **PRINCE ABDULAZIZ BIN FAHD** to service his needs when travelling.

13.     During the course of his employment, Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER** knew or should have known of Defendant **MUSTAPHA OUANES'** predisposition toward abusing women, of his violent propensities, and of his status as a sexual predator, yet did nothing to stop it.

14.     Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER** not only knew or should have known of Defendant **MUSTAPHA OUANES'** predisposition to abusing women, of his violent propensities, and of his status as a sexual predator, but encouraged his misconduct so that other employees could similarly abuse, sexually harass and/or molest unsuspecting women lured by Defendant **MUSTAPHA OUANES** to **PRINCE ABDULAZIZ BIN FAHD**'s rooms at The Plaza Hotel under false pretenses.   Unfortunately, Plaintiff was a victim of this horrifying criminal practice.

15.     Defendants' systematic subjection of Plaintiff to disgusting, degrading and unlawful tortious misconduct, including false imprisonment, sexual assault, battery, sodomy and rape, was so inappropriate and egregious that any member of society would take offense.

16.     On or about January 26, 2010, Plaintiff **JANE DOE** was subjected to the flagrantly lewd, vulgar and repulsive behavior of Defendant **MUSTAPHA OUANES**, which culminated in her repeated, brutal sexual assault by Defendant **MUSTAPHA OUANES** and other employees of Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER**.

17.     At all times relevant herein, decisions were made by Defendants **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER** that facilitated Plaintiff's subjection to sexual abuse and torture. Unfortunately, Defendants not only failed to condemn but permitted and actively encouraged its

executives, officers, managers, supervisors, employees and/or agents to engage in the sexual

harassment and abuse of women by promoting the philosophy that all women were at the disposal

of the **PRINCE** and his elite employees.

**SPECIFIC ALLEGATIONS OF
NEGLIGENCE, SEXUAL HARASSMENT AND ABUSE**

18.      In approximately January 2010, Plaintiff **JANE DOE** was employed as a bartender at the

now defunct Habibi Lounge, a Middle Eastern hookah bar, located in Manhattan's East Village.

At the time, Plaintiff lived in Manhattan and was studying holistic health.

19.      At approximately 12:30 or 1:00 a.m. on or about the early morning of January 26, 2010,

Plaintiff **JANE DOE** finished her shift at Habibi Lounge and the bar closed for the evening.

Plaintiff and several co-workers left the premises together and went to Veranda, a Mediterranean

restaurant and cocktail lounge located in the West Village, for an after-work drink.   There,

Plaintiff and her co-workers were joined by several friends, most of whom also worked in the

restaurant industry.   One of those friends, "Mary Doe"[2], was then a 25-year-old NYU student

living in midtown Manhattan who also worked at her family's restaurants.

20.      On or about January 26, 2010, Defendant **MUSTAPHA OUANES** approached Plaintiff

**JANE DOE** at Veranda and offered to buy her a drink.   **JANE DOE** declined.

21.      After approximately 30 minutes, the owners of Veranda informed their customers that the

lounge was closing for the evening, but suggested everyone go to another of their venues in the

West Village, Falucka Lounge.

22.      At approximately 2:00 a.m. on or about January 26, 2010, Plaintiff **JANE DOE** and

approximately 10-15 of her co-workers and friends, including Mary Doe, arrived at Falucka

Lounge.   Defendant **MUSTAPHA OUANES** also went to Falucka Lounge.

---

[2] Due to the nature of this case, the name of Plaintiff's friend is changed to protect her identity.

23.     Between approximately 2:00 a.m. and 4:30 a.m. on or about January 26, 2010, Plaintiff **JANE DOE** socialized with her friends and co-workers at Falucka Lounge.   At one juncture, Defendant **MUSTAPHA OUANES** bought a round of champagne for everyone.   Plaintiff spoke to Defendant **MUSTAPHA OUANES** briefly to thank him for the glass of champagne.   He informed her that he was born in Algeria and worked for a Saudi Arabian Prince.   Plaintiff thought of him as a harmless old man.

24.     At approximately 4:30 or 5:00 a.m. on or about January 26, 2010, Plaintiff **JANE DOE** and Mary Doe, by then intoxicated, left Falucka Lounge to spend the night at Mary Doe's apartment in midtown Manhattan.   After stating that he was going the same direction and lived nearby at The Plaza Hotel, Defendant **MUSTAPHA OUANES** joined them in a cab.   During the cab ride, Plaintiff and Mary Doe discussed finding a place to eat but recognized that little was open at that hour.   Defendant **MUSTAPHA OUANES** suggested they join him at The Plaza Hotel for breakfast, explaining that since he worked for **HRH PRINCE ABDULAZIZ BIN FAHD**, they would be able to get service, regardless of the hour.   Plaintiff and her friend agreed.

25.     At approximately 5:00 a.m. on or about January 26, 2010, Plaintiff **JANE DOE** and Mary Doe arrived at The Plaza Hotel with Defendant **MUSTAPHA OUANES**.   Since the hotel's restaurants were closed, Defendant **MUSTAPHA OUANES** insisted Plaintiff and Mary Doe accompany him to his room where he would order room service.   Once they were seated at a table in the room and had ordered breakfast, Defendant **MUSTAPHA OUANES** told Plaintiff and Mary Doe that he had to go meet with the **PRINCE**.

26.     A few minutes later, at approximately 5:15 a.m. on or about January 26, 2010, Defendant **MUSTAPHA OUANES** returned to the room with three Arab men, one of whom was clad in traditional Saudi garb.   The men were purportedly there to join them for breakfast.   Defendant

MUSTAPHA OUANES briefly introduced the men in English to Plaintiff and her friend.   On

information and belief, one of those men was Defendant PRINCE ABDULAZIZ BIN FAHD's

butler Zia El Ghoche.   The men primarily spoke in Arabic.

27.      During breakfast, Defendant MUSTAPHA OUANES boasted to Plaintiff and her friend:

"We have a yacht, we have planes, and we work with the son of a King."

28.      At approximately 5:30 a.m. on or about January 26, 2010, Plaintiff JANE DOE noticed

as she poured mimosas that her drink looked strange.   Plaintiff JANE DOE remarked to Mary

Doe: "This orange juice looks funny."   Defendant MUSTAPHA OANUES and the other men

remained seated, smoking cigarettes, but said nothing.   Plaintiff JANE DOE then lost

consciousness.

29.      On information and belief, at approximately 5:30 a.m. on or about January 26, 2010,

Defendant MUSTAPHA OANUES and his cohorts, all employees of Defendants PRINCE

ABDULAZIZ BIN FAHD and/or SAUDI OGER, roofied Plaintiff JANE DOE and her friend

Mary Doe.

30.      During the morning of on or about January 26, 2010, Plaintiff JANE DOE awakened to

find herself lying on her back on the king bed in Defendant MUSTAPHA OANUES' room.

Defendant MUSTAPHA OANUES was bare-chested and on top of her.   Plaintiff's dress was

shoved up around her neck while her tights and underpants were pulled down around her ankles.

Her bra had been removed.   Plaintiff JANE DOE, who is approximately 5'2" and then weighed

about 105 pounds, struggled but could not move: Defendant MUSTAPHA OANUES was at least

approximately eight inches taller and approximately 70 pounds heavier than she.   To her horror,

Plaintiff realized Defendant MUSTAPHA OANUES was raping her.

31.      On or about the morning of January 26, 2010, Defendant MUSTAPHA OANUES raped

Plaintiff **JANE DOE**.

32.     Thereafter, during the morning of January 26, 2010, Plaintiff **JANE DOE** once again lost consciousness.

33.     Subsequently during the morning of January 26, 2010, Plaintiff **JANE DOE** regained consciousness and realized that Defendant **MUSTAPHA OANUES** was again on top of her, raping her.   Plaintiff **JANE DOE** tried to move her limbs but felt heavily drugged.   She turned to the side and realized her friend, Mary Doe, was lying unconscious next to her on the bed.   Plaintiff tried to move her arms to wake up her friend, and tried to scream.

34.     During the morning of January 26, 2010, Mary Doe regained consciousness and witnessed Defendant **MUSTAPHA OANUES** raping her friend, Plaintiff **JANE DOE**.   Mary Doe appeared anaesthetized and was unable to move or help.

35.     Thereafter, during the morning of January 26, 2010, Defendant **MUSTAPHA OANUES** moved Plaintiff **JANE DOE** perpendicular to her friend Mary Doe, flipped her over on her stomach and pulled her legs down off the side of the bed.   Defendant **MUSTAPHA OANUES** then got behind Plaintiff **JANE DOE**, forcefully grabbed and held her by the hips with both hands, and pinned her down against the bed.   Plaintiff desperately attempted to crawl away toward her friend, but was unable to do so.

36.     On the morning of January 26, 2010, Defendant **MUSTAPHA OANUES** sodomized Plaintiff **JANE DOE**.

37.     During the morning of January 26, 2010, Plaintiff **JANE DOE** and Mary Doe made eye contact as Defendant **MUSTAPHA OANUES** sodomized Plaintiff **JANE DOE**.

38.     Thereafter, as Plaintiff **JANE DOE** watched, Mary Doe began moving and struggling to get up, but repeatedly collapsed back on the bed like a ragdoll.   At the time, Mary Doe's leggings

were down around her ankles.   Plaintiff **JANE DOE** subsequently lost consciousness.

39.     During the morning of January 26, 2010, Defendant **MUSTAPHA OANUES** forced

Plaintiff **JANE DOE** to perform fellatio on him.

40.     During the morning of January 26, 2010, Defendant **MUSTAPHA OANUES** sexually

assaulted Mary Doe.

41.     On information and belief, during the morning of January 26, 2010, several other

employees of Defendant **PRINCE ABDULAZIZ BIN FAHD** and **SAUDI OGER** sexually

assaulted Plaintiff **JANE DOE** and Mary Doe.

42.     Later during the morning of January 26, 2010, Plaintiff **JANE DOE** again regained

consciousness, pulled herself across the bed, and, while crying hysterically, shook her friend

awake.   Mary Doe began shouting at Defendant **MUSTAPHA OANUES**:   "What were you

doing to her?   What did you do to her!"   Defendant **MUSTAPHA OANUES** sat calmly in a

chair, staring at the women, while putting on his dress shirt.

43.     On the morning of January 26, 2010, Plaintiff **JANE DOE** broke a glass by the bed and

held it up as a weapon.   At the same time, Mary Doe struggled to dial 911 on The Plaza Hotel

telephone.   Defendant **MUSTAPHA OANUES** stared at the girls coldly, and said nonchalantly:

"Go ahead, call the police.   Do whatever you want."   Plaintiff **JANE DOE**, terrified, screamed

and ran into the bathroom.   She was convinced Defendant **MUSTAPHA OANUES** and his

consorts were going to kill them.

44.     During the morning of January 26, 2010, Defendant **PRINCE ABDULAZIZ BIN**

**FAHD**'s butler Zia El Ghoche came into the room, spoke briefly in Arabic to Defendant

**MUSTAPHA OANUES**, then shouted at Plaintiff and Mary Doe:   "Who are you girls?   Give

me your IDs!   Get out of here!   You have no business being in here!"

45.     Moments later, Nizar Adeeb, an employee of The Plaza Hotel assigned to look after Defendant **PRINCE ABDULAZIZ BIN FAHD**'s needs, came into the room.   Mary Doe shouted:   "Who are you? Do you work for the **PRINCE** too?"   Mr. Adeeb replied "no," then stood in the room without speaking while waiting for the police to arrive.

46.     Moments later, at approximately 8:00 a.m. during the morning of January 26, 2010, New York City Police Department officers arrived and arrested Defendant **MUSTAPHA OANUES**. Before he left the room, Nizar Adeeb placed a jacket over Defendant **MUSTAPHA OANUES'** shoulders to conceal his handcuffs and handed him a $100 bill.   On information and belief, Mr. Adeeb subsequently admitted that his primary concern was The Plaza Hotel's reputation.

47.     During the morning of January 26, 2010, Plaintiff **JANE DOE** and Mary Doe were subsequently escorted by the police to the Emergency Room at Roosevelt Hospital where both women underwent rape kits.   Plaintiff **JANE DOE** had multiple contusions in and around her vagina, anus and breasts, as well as bruises revealing handprints at her waist and hips.   She was bleeding from her rectum and her jaw was sore.   Mary Doe's makeup was smeared around her eye, which was bloodshot from a burst capillary.

48.     On or about the morning of January 26, 2010, DNA testing was performed on Plaintiff **JANE DOE**'s mouth that confirmed the presence of feces and vaginal fluid.   DNA testing performed that morning subsequently confirmed that Plaintiff **JANE DOE** was raped.   The DNA matched that of Defendant **MUSTAPHA OANUES**.

49.     On information and belief, on or about the morning of January 26, 2010, DNA testing was performed on Mary Doe that demonstrated the presence of semen on her body and in her vagina.

50.     In approximately early February 2010, DNA testing performed at the crime scene revealed the presence of semen from Defendant **MUSTAPHA OANUES** on the bed sheets at The Plaza

Hotel.   In addition, DNA testing revealed the presence of semen from other men on the same bed sheets.

51.    Plaintiff **JANE DOE** was subsequently diagnosed with complex Post-Traumatic Stress Disorder, anxiety disorder and massive depression.   She quit her job and studies and moved back home to live with her parents.

52.    In approximately March 2010, Plaintiff **JANE DOE** commenced intensive psychiatric treatment three times per week as an out-patient.   She was prescribed then and continues to take antidepressants, anti-anxiety medication and sleeping pills.

53.    On or about August 8, 2011, Plaintiff **JANE DOE** attempted suicide.   She was transported by ambulance to Community Medical Center in Toms River, New Jersey where she was intubated and remained comatose in ICU for two days.   Plaintiff **JANE DOE** was hospitalized for approximately one week.

54.    On or about February 15, 2012, following a two-week trial in The New York (Manhattan) Criminal Court, Defendant **MUSTAPHA OANUES** was convicted on five out of seven criminal charges: First Degree Rape, First Degree Criminal Sexual Assault, First Degree Sexual Abuse, Second Degree Assault and Attempted Sexual Abuse.

55.    On or about June 6, 2012, The Honorable Justice Daniel McCullough of The New York (Manhattan) Criminal Court sentenced Defendant **MUSTAPHA OANUES** to 10 years in prison for his crimes.

56.    As a consequence of this egregious misconduct, Plaintiff **JANE DOE** has suffered and continue to suffer severe emotional distress, including depression, anxiety, nightmares, sleep disturbance, crying jags, loss of sexual drive, fear of intimacy, and upset.   Moreover, Plaintiff has suffered economic loss.

57.     The allegations set forth above and below are incorporated by reference as if fully set forth herein.

## AS AND FOR A FIRST CAUSE OF ACTION
## NEGLIGENT HIRING

58.     Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

59.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was a sexual harasser and sexual predator with a history of inappropriate, unsolicited, licentious behavior toward women.   A reasonable background check should have reflected the same.

60.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was an individual of violent propensities with a history of inappropriate, unsolicited, threatening and/or violent behavior toward employees.

61.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was unfit to supervise women.

62.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was unfit to

supervise anyone.

63.    Despite the foregoing, Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** hired Defendant **MUSTAPHA OUANES**.

64.    Hiring Defendant **MUSTAPHA OUANES** after Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was a sexual harasser, constitutes a breach of Defendants' duty of reasonable care.

65.    Hiring Defendant **MUSTAPHA OUANES** after Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known of Defendant **MUSTAPHA OUANES'** dangerous and/or violent propensities, constitutes a breach of the Defendants' duty of reasonable care.

66.    In hiring Defendant **MUSTAPHA OUANES** and placing him in a position where he could continue his inappropriate and unlawful conduct, Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** failed to protect the general public, including Plaintiff **JANE DOE**, from hazards known or in the exercise of reasonable care should have been known to Defendants.

67.    In knowing of Defendant **MUSTAPHA OUANES'** inappropriate conduct, including but not limited to his history of sexual harassment, and/or assault and battery, and/or threatening or intimidating conduct, and/or stalking, yet hiring him anyway, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** failed in their duty to prevent acts of sexual assault, battery, harassment, stalking, threats, intimidation and/or stalking against Plaintiff **JANE DOE** and Mary Doe as well as other women.

68.     Because Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD**
knew or in the exercise of reasonable care should have known of Defendant **MUSTAPHA
OUANES'** reputation for sexual harassment, and further knew or in the exercise of reasonable
care should have foreseen that Defendant **MUSTAPHA OUANES** would engage in sexual
harassment of women, yet hired him anyway, Defendants **SAUDI OGER LTD** and **PRINCE
ABDULAZIZ BIN FAHD** caused Plaintiff **JANE DOE** to be injured by the conduct of its
employees, including Defendant **MUSTAPHA OUANES.**

69.     Because Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD**
knew or in the exercise of reasonable care should have known of Defendant **MUSTAPHA
OUANES'** reputation for sexual harassment, and/or assault and battery, and/or threatening or
intimidating conduct, and/or stalking, and further knew or in the exercise of reasonable care should
have foreseen that Defendant **MUSTAPHA OUANES** would continue to engage in the sexual
harassment, assault, sexual assault, battery, stalking, an/or intimidation of women, yet hired
him anyway, Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** caused
Plaintiff **JANE DOE** to be injured by the conduct of its employees, including Defendant
**MUSTAPHA OUANES.**

70.     As a consequence of Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN
FAHD**'s negligent hiring, Plaintiff **JANE DOE** sustained conscious physical pain and suffering,
great mental distress, shock, fright and humiliation.

71.     As a consequence of the foregoing misconduct of Defendants **SAUDI OGER LTD** and
**PRINCE ABDULAZIZ BIN FAHD**, Plaintiff **JANE DOE** has sustained damage in the sum of
FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in
the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## NEGLIGENT SUPERVISION

72.     Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

73.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that its employee Defendant **MUSTAPHA OUANES** was a sexual harasser with a history of inappropriate, unsolicited, licentious behavior toward women in general, and an individual with dangerous and violent propensities.

74.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was unfit as an employee.

75.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** should not have been cloaked in any manner of authority or legitimacy, let alone as part of Defendant **SAUDI OGER**'s "VIP" unit and a member of **HRH PRINCE ABDULAZIZ BIN FAHD**'s travelling entourage.

76.     In light of Defendant **MUSTAPHA OUANES**' history, pattern and practice as a sexual harasser of women, and in light of Defendant **MUSTAPHA OUANES**' history, pattern and practice as a violent individual prone to threatening and/or violent behavior, including but not limited to stalking, drugging, assault and/or battery and/or rape, Defendants **SAUDI OGER LTD**

and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** should be adequately trained, and that his conduct and activities should be closely monitored and supervised at all times.

77.     In light of Defendant **MUSTAPHA OUANES'** history, pattern and practice as a violent individual prone to threatening and/or violent behavior, including but not limited to stalking, drugging, assault and/or battery and/or rape, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES'** conduct and activities should be closely monitored and supervised at all times.

78.     Rather than discouraging or prohibiting Defendant **MUSTAPHA OUANES** from his mistreatment and/or abuse of women, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, condoned and ratified Defendant **MUSTAPHA OUANES'** behavior, encouraging Defendant **MUSTAPHA OUANES** and other employees to embrace the philosophy that women should serve at the **PRINCE**'s disposal.

79.     By failing to adequately observe, monitor, train and supervise Defendant **MUSTAPHA OUANES**, by failing to alert and warn others of Defendant **MUSTAPHA OUANES'** inappropriate and unlawful conduct, and by condoning rather than condemning the inappropriate and unlawful conduct of its employees, including Defendant **MUSTAPHA OUANES**, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, failed to protect their employees, including Plaintiff **JANE DOE** and Mary Doe, from hazards known or

reasonably known to Defendants.

80.     In knowing of Defendant **MUSTAPHA OUANES'** sexual harassment, and/or assault and

battery, and/or threatening or intimidating conduct, and/or stalking and/or rape, and/or other

felonious actions perpetrated against innocent women, Defendants **SAUDI OGER LTD** and/or

**PRINCE ABDULAZIZ BIN FAHD**, failed in their duty to supervise their employees, including

Defendant **MUSTAPHA OUANES**, so as to prevent continued acts of sexual assault, battery,

harassment, stalking, threats, intimidation of and/or rape against Plaintiff as well as other women.

81.     By breaching their duty to supervise their employees, including Defendant **MUSTAPHA**

**OUANES**, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**,

caused Plaintiff **JANE DOE** to be injured by the conduct of its employees, including Defendant

**MUSTAPHA OUANES**.

82.     As a consequence of Defendants **SAUDI OGER LTD**'s and **PRINCE ABDULAZIZ**

**BIN FAHD**'s negligent supervision, Plaintiff **JANE DOE** sustained conscious physical pain and

suffering, great mental distress, shock, fright and humiliation.

83.     As a consequence of the foregoing misconduct of Defendants **SAUDI OGER LTD** and

**PRINCE ABDULAZIZ BIN FAHD**, Plaintiff **JANE DOE** has sustained damage in the sum of

FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in

the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION
## NEGLIGENT RETENTION

84.     Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in

paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at

length herein.

85.     Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their

officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that its employees, including Defendant **MUSTAPHA OUANES**, were sexual harassers with a history of inappropriate, unsolicited, licentious behavior toward female employees.

86.    Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was an individual with violent propensities with a history of inappropriate, unsolicited, threatening and/or violent behavior toward employees.

87.    Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** was unfit as an employee.

88.    Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES** should not have been cloaked in any manner of authority or legitimacy, let alone as part of Defendant **SAUDI OGER**'s "VIP" unit and a member of **HRH PRINCE ABDULAZIZ BIN FAHD**'s travelling entourage.

89.    In light of Defendant **MUSTAPHA OUANES**' known history, reputation, pattern and practice as a sexual harasser of women, and because it was foreseeable that Defendant **MUSTAPHA OUANES** would further engage in sexual harassment of women, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors,

supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES'** employment should not have been continued.

90.    In light of Defendant **MUSTAPHA OUANES'** history, reputation, pattern and practice as a violent individual prone to threatening and/or violent behavior, including but not limited to assault and/or battery, threatening and/or intimidating conduct, stalking and/or rape, and/or other felonious actions, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known that Defendant **MUSTAPHA OUANES'** employment should not have been continued.

91.    Retaining Defendant **MUSTAPHA OUANES** when Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known Defendant **MUSTAPHA OUANES** was a sexual harasser and/or a sexual predator, constitutes a breach of the Defendants' duty of reasonable care.

92.    Retaining Defendant **MUSTAPHA OUANES** when Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or employees, knew or in the exercise of reasonable care should have known of Defendant **MUSTAPHA OUANES'** threatening behavior and/or dangerous or violent propensities, constitutes a breach of Defendants' duty of reasonable care.

93.    Rather than discouraging or prohibiting Defendant **MUSTAPHA OUANES** from his mistreatment and/or abuse of women, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their officers, directors, supervisors, managers, agents and/or

employees, condoned and ratified Defendant **MUSTAPHA OUANES**' behavior, encouraging Defendant **MUSTAPHA OUANES** and other employees to embrace the philosophy that women should serve at the **PRINCE**'s disposal.

94.     By continuing the employment of Defendant **MUSTAPHA OUANES**, by covering up the acts of intimidation, threats, assault and battery, sexual harassment, and/or retaliation of Defendant **MUSTAPHA OUANES**, by continuing to place employees, including Defendant **MUSTAPHA OUANES**, in a position where they could continue their inappropriate conduct, and in failing to alert and warn others of Defendant **MUSTAPHA OUANES**' inappropriate and unlawful conduct, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** failed to protect the general public, including Plaintiff **JANE DOE** and Mary Doe, from hazards known to Defendants.

95.     In knowing of Defendant **MUSTAPHA OUANES**' sexual harassment, including assault and battery, and/or threatening or intimidating conduct, and/or stalking and/or rape, and/or other felonious actions perpetrated against women yet continuing to employ Defendant **MUSTAPHA OUANES**, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** failed in their duty to prevent continued acts of sexual assault, battery, harassment, stalking, threats, intimidation of and/or rape against Plaintiff.

96.     By unreasonably retaining Defendant **MUSTAPHA OUANES**, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** caused Plaintiff **JANE DOE** to be injured by the conduct of their employees, including Defendant **MUSTAPHA OUANES**.

97.     As a consequence of Defendants **SAUDI OGER LTD**'s and/ or **PRINCE ABDULAZIZ BIN FAHD**'s negligent retention, Plaintiff **JANE DOE** sustained conscious physical pain and suffering, great mental distress, shock, fright and humiliation.

98.     As a consequence of the foregoing misconduct of Defendants **SAUDI OGER LTD** and/or

**PRINCE ABDULAZIZ BIN FAHD**, Plaintiff **JANE DOE** has sustained damage in the sum of

FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in

the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>
<u>**RESPONDEAT SUPERIOR**</u>

99.     Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in

paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at

length herein.

100.    At all times set forth hereinabove, including but not limited to when he induced Plaintiff

**JANE DOE** and Mary Doe to accompany him back to the floors of The Plaza Hotel reserved by

Defendant **PRINCE ABDULAZIZ BIN FAHD**, introduced Plaintiff and Mary Doe to other

employees of Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD,**

drugged them, and forced them to gratify his sexual pleasure and/or that of other employees of

Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD,** Defendant

**MUSTAPHA OUANES** acted in the course and scope of his 24-hour-per-day duties as a member

of Defendant **SAUDI OGER's** "VIP" Unit and a personal assistant to Defendant **PRINCE**

**ABDULAZIZ BIN FAHD.**

101.    Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, their

officers, directors, supervisors, managers, agents and/or employees, encouraged, condoned,

authorized, directed and/or ratified Defendant **MUSTAPHA OUANES'** behavior, encouraging

Defendant **MUSTAPHA OUANES** and other employees to embrace the philosophy that women

should serve at the **PRINCE's** disposal, and expecting him to provide women for their pleasure as

part of his scope of duties as an employee of Defendants **SAUDI OGER LTD** and/or **PRINCE**

**ABDULAZIZ BIN FAHD**.

102.   Because Defendant **MUSTAPHA OUANES** was acting within the course and scope of his duties as an employee of Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** when Plaintiff **JANE DOE** was subjected to stalking, false imprisonment, sexual harassment, assault, battery, molestation, sexual abuse and/or rape by their employee Defendant **MUSTAPHA OUANES**, as well as other employees, Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD** are vicariously liable for the harm done to Plaintiff under the theory of respondeat superior, including Plaintiff's conscious physical pain and suffering, great mental distress, shock, fright and humiliation.

103.   As a consequence of the foregoing misconduct of Defendants **SAUDI OGER LTD** and/or **PRINCE ABDULAZIZ BIN FAHD**, Plaintiff **JANE DOE** has sustained damage in the sum of FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ASSAULT

104.   Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

105.   Defendant **MUSTAPHA OUANES**, in perpetrating the above described conduct, placed Plaintiff **JANE DOE** in apprehension and fear of unwanted, unwarranted, unsolicited physical touching of her person by Defendant in a manner that was harmful and offensive to Plaintiff **JANE DOE** and would be harmful and offensive to any reasonable person.

106.   Defendant **MUSTAPHA OUANES** was subsequently charged and convicted of multiple

violations of New York's penal code, including sexual assault and first degree rape.   Accordingly, Plaintiff's cause of action is timely under CPLR §215(8)(a), §213-b and §213-c.

107.    As a consequence of the conduct of Defendant **MUSTAPHA OUANES**, Plaintiff **JANE DOE** has incurred physical and psychological trauma and damage, have suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AND FOR A FIFTH CAUSE OF ACTION
## BATTERY

108.    Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

109.    Defendant **MUSTAPHA OUANES**, in perpetrating the above-described non-consensual sexual assaults, including his grabbing, pulling, and physically pinning Plaintiff **JANE DOE** beneath his person, his forcing Plaintiff to engage in sexual acts, and his repeated sexual molestation of Plaintiff, including his sodomizing and raping Plaintiff **JANE DOE**, did, without consent, touch Plaintiff **JANE DOE** in a manner that was both harmful and offensive to Plaintiff and in a manner that any reasonable person would similarly find harmful and offensive.

110.    Defendant **MUSTAPHA OUANES** was subsequently charged and convicted of multiple violations of New York's penal code, including but not limited to the first degree rape of Plaintiff **JANE DOE**.   Accordingly, Plaintiff's cause of action is timely under CPLR §215(8)(a), §213-b and §213-c.

111.    As a consequence of the conduct of Defendant **MUSTAPHA OUANES**, Plaintiff

**JANE DOE** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**

112.    Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

113.    Defendant **MUSTAPHA OUANES**, in perpetrating the above-described non-consensual sexual assaults, did, by use of threat and/or physical force, confine, imprison and/or restrain Plaintiff **JANE DOE** without lawful authority to do so and against her will.

114.    Defendant **MUSTAPHA OUANES** was subsequently charged and convicted of multiple violations of New York's penal code, including but not limited to the first degree rape of Plaintiff **JANE DOE**.   Accordingly, Plaintiff's cause of action is timely under CPLR §215(8)(a), §213-b and §213-c.

115.    As a consequence of Defendant **MUSTAPHA OUANES'** false imprisonment of Plaintiff **JANE DOE**, Plaintiff sustained conscious pain and suffering, Plaintiff's health was impaired, Plaintiff suffered great mental distress, shock, fright and humiliation, and Plaintiff's reputation and character were injured.

116.    As a consequence of the conduct of Defendant **MUSTAPHA OUANES**, Plaintiff **JANE DOE** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in

the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117.    Plaintiff **JANE DOE** repeats and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth at length herein.

118.    As a consequence of Defendant **MUSTAPHA OUANES'** wholly unlawful, intentional, reckless and negligent conduct, Defendant **MUSTAPHA OUANES** intentionally inflicted emotional distress upon Plaintiff **JANE DOE**.

119.    Defendant **MUSTAPHA OUANES**, through a pattern of extreme and outrageous conduct, which was beyond all possible bounds of decency, and which may be regarded as atrocious and utterly intolerable within a civilized society, assaulted, battered, molested, harassed, humiliated, degraded and retaliated against Plaintiff.

120.    As a consequence of Defendant **MUSTAPHA OUANES'** intentional infliction of emotional distress against Plaintiff **JANE DOE**, Plaintiff sustained conscious pain and suffering, Plaintiff's health was impaired, and Plaintiff suffered great mental distress, shock, fright and humiliation.

121.    As a consequence of the conduct of Defendant **MUSTAPHA OUANES**, Plaintiff **JANE DOE** has incurred physical and psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering, and has sustained damage in the sum of FIFTY MILLION ($50,000,000.00) DOLLARS compensatory damages and punitive damages in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.

WHEREFORE, Plaintiff **JANE DOE** demands judgment against Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** in the First Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; Plaintiff **JANE DOE** demands judgment against Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** in the Second Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; Plaintiff **JANE DOE** demands judgment against Defendants **SAUDI OGER LTD** and **PRINCE ABDULAZIZ BIN FAHD** in the Third Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; Plaintiff **JANE DOE** demands judgment against Defendant **MUSTAPHA OUANES** in the Fourth Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; Plaintiff **JANE DOE** demands judgment against Defendant **MUSTAPHA OUANES** in the Fifth Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; Plaintiff **JANE DOE** demands judgment against Defendant **MUSTAPHA OUANES** in the Sixth Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS; and Plaintiff **JANE DOE** demands judgment against Defendant **MUSTAPHA OUANES** in the Seventh Cause of Action in the amount of ONE HUNDRED FIFTY MILLION ($150,000,000.00) DOLLARS, all together with the costs and

//

//

//

//

//

//

D   isbursements of this action, including attorneys fees, plus interest, and for any other relief

which

this Court deems just and proper.


Dated:        New York, New York
              January 25, 2013


**MORELLI ALTERS RATNER**


By: _____
          Martha M. McBrayer, Esq.   (MM-7097)
          950 Third Avenue, 11th Floor
          New York, New York 10022
           (212) 751-9800