UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JANE DOE,

    Plaintiff,       13 Civ. 571

 -against-          OPINION

HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD,
SAUDI OGER LTD, and MUSTAPHA OUANES,

    Defendants.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    MORELLI ALTERS RATNER, PC
    950 Third Avenue, 11th Floor
    New York, NY 10022
    By: Martha M. McBrayer, Esq.
      Jeremy J. Troxel, Esq.

    Attorneys for Defendant
    Saudi Oger Ltd.

    QUINN EMANUEL URQUHART & SULLIVAN LLP
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    By: Michael B. Carlinsky, Esq.
      Rex Lee, Esq.
      William A. Burck, Esq.
      Nicholas A.S. Hoy, Esq.

**Sweet, D.J.**

Defendant Saudi Oger Ltd. ("Saudi Oger") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Complaint (the "FAC") filed by plaintiff Jane Doe (the "Plaintiff") for failure to state a claim upon which relief can be granted. Based upon the conclusions set forth below, the motion is granted, and the FAC is dismissed.

**Prior Proceedings**

Plaintiff filed her original complaint on January 25, 2013. On February 14, 2013, Plaintiff filed an affidavit of service claiming to have served "Saudi Oger Ltd d/b/a Hariri Interests" on February 5, 2013. Non-party Hariri Interests moved to dismiss the complaint on April 1, 2013, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6). In her opposition, Plaintiff conceded that Hariri Interests' argument that it was not a d/b/a of Saudi Oger was "persuasive" and cross-moved to amend her complaint to remove Hariri Interests as a defendant. Plaintiff also admitted that she "lacks any evidence suggesting that Saudi Oger knew or should have known of

1

[defendant Mustapha Ouanes' ("Ouanes" or the "Individual Defendant")] propensities before he was hired," and therefore proposed to withdraw her negligent hiring claim. On May 2, Plaintiff and Hariri Interests stipulated to dismiss the complaint against Hariri Interests with prejudice.

Plaintiff filed the FAC on May 7, 2013, removing Hariri Interests from the lawsuit and withdrawing the negligent hiring claim against Saudi Oger and the Prince.

**Allegations of the FAC**

The FAC contends the following allegations.

On January 26, 2010, defendant Ouanes invited Plaintiff and her female friend to accompany him from a lounge in the West Village to his hotel room at the Plaza Hotel. (FAC ¶ 24.) At about 5:30 a.m., Plaintiff was drugged by Ouanes (*id.* at ¶ 29), and awoke some time later to "realize [Ouanes] was raping her" (*id.* at ¶ 30). In February 2012, after a two-week trial in New York (Manhattan) Criminal Court, Ouanes was convicted of rape and sexual abuse, and was sentenced to ten years in prison. (*Id.* at ¶¶ 54-55.)

2

Ouanes was a former employee of defendants Saudi Oger and defendant HRH Prince Abdulaziz Bin Fahd Alsaud (the "Prince") at the time of Plaintiff's injury and was living in New York temporarily at the Plaza Hotel as an employee of Saudi Oger's "VIP unit," which served as the Prince's traveling entourage. (*Id.* at ¶¶ 4, 6.) Saudi Oger "was and remains a global corporation based in Saudi Arabia and one of the leading construction, facilities management, real estate development, and infrastructure project development providers in the world," and Ouanes was a "trained mechanical engineer" whose specific duties as an employee included ensuring that the "climate" of the floor inhabited by the Prince at the Plaza Hotel was properly regulated. (*Id.* at ¶¶ 4-5.) In addition, Ouanes' duties included "luring unsuspecting women" to "gratify the sexual pleasure" of the Prince and his entourage. (*Id.* at ¶ 5.) At least three employees of Saudi Oger's VIP Unit were with Ouanes when she was raped in Ouanes' room (*Id.* ¶¶ 2-3, 25-29), and DNA evidence suggests that Ouanes was not the only Saudi Oger employee who sexually assaulted the Plaintiff on or about January 26, 2010. (*Id.* ¶¶ 16, 50.)

The FAC asserts causes of action for negligent supervision (FAC at ¶¶ 58-69), negligent retention (*id.* at ¶¶ 70-84), and respondeat superior (*id.* at ¶¶ 85-89) against Saudi Oger. In support of these claims, the FAC alleges that Saudi Oger "knew or should have known of [Ouanes'] predisposition to abusing women, his violent propensities, and of his status as a sexual predator." (*Id.* at ¶ 13.)

**The Applicable Standard**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *County of Suffolk, N.Y. v. First Am. Real Estate Solutions*, 261 F.3d 179, 187 (2d Cir. 2001) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996)).

4

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## Respondeat Superior Is Not Adequately Alleged

To state claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests. *See, e.g., K.I. v. New York City Bd. of Educ.*, 256 A.D.2d 189, 191 (1st Dep't 1998) (noting no respondeat superior where tortuous conduct was outside of scope of volunteer's duties). "An employer will not be held liable under [the doctrine of respondeat superior] for actions which were not taken in furtherance of the employer's

5

interest and which were undertaken by the employee for wholly personal motives." *Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 242 A.D.2d 64, 68 (2d Dep't 1998) (citation omitted). Ouanes' own deplorable motivations were not part of any conceivable duty he had to Saudi Oger. For this reason, the claim must be dismissed. *See Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (Sotomayor, J.) ("[W]here a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim.") (citations omitted).

"New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Ross v. Mitsui Fudosan*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (citations omitted). No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault. *See Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 516-17 (S.D.N.Y. 2004) ("New York courts have repeatedly found no vicarious liability for claims involving sexual

6

misconduct, including sexual assault.") (citations omitted);
*Haybeck*, 944 F. Supp. at 330 (employee's failure to disclose
HIV-positive status to plaintiff was not attributable to
employer); *Judith M. v. Sisters of Charity Hosp.*, 715 N.E.2d 95,
96 (N.Y. 1999) (holding that a hospital orderly who was tasked
with bathing the plaintiff was acting outside the scope of his
duties when he sexually abused her while doing so); *Kirkman v.
Astoria Gen. Hosp.*, 204 A.D.2d 401, 402 (2d Dep't 2004)
(dismissing complaint alleging employer liability for rape of
child patient by hospital security guard); *Joshua S. v. Casey*,
206 A.D.2d 839, 839 (4th Dep't 1994) (upholding dismissal of
respondeat superior claim for sexual abuse of a child by a
priest); *Koren v. Weihs,* 190 A.D.2d 560, 560-61 (1st Dep't 1993)
(dismissing claim alleging employer liability for hospital
psychotherapist who engaged in "sex therapy" with a patient).

        In addition, the FAC does not contain allegations that
establish that the assault furthered Saudi Oger's business
interests, even if those interests somehow included luring women
to the Plaza Hotel for the benefit of the Prince and his
entourage. If Plaintiff had sufficiently pleaded that Saudi Oger
had direct knowledge of prior sexual misconduct on the part of
Ouanes, which she has not, that still would not give rise to

7

respondeat superior liability in the absence of an allegation that the misconduct was part of any actual responsibility Ouanes had to Saudi Oger. *See Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 447-48 (E.D.N.Y. 2009) ("If plaintiff's facts are credited, a rational jury could find that Piscopo's assault was reasonably foreseeable, but a rational jury could not find that the assault was within the scope of Piscopo's employment at PCR. Although the assault occurred in the PCR parking lot before work, the assault in no way further PCR's business.") (citation omitted); *Adorno*, 312 F. Supp. 2d at 517-18 ("The applicability of these principles is not altered merely because CSC allegedly had notice of Correa's propensity to commit sexual acts . . . . 'What is reasonably foreseeable in the context of respondeat superior is quite a different thing from the foreseeable unreasonable risk of harm that spells negligence. When we talk of vicarious liability we are not looking for the employer's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise [the employer] has undertaken.'") (citing *Cronin v. Hertz Corp.*, 818 F.2d 1064, 1068 (2d Cir. 1987)).

The Plaintiff has argued that "New York law does not prohibit respondeat superior claims in cases involving sexual

misconduct" (Opp. at 9-10), but no authority to support that
argument or decision holding an employer liability for sexual
assault under respondeat superior has been cited. The Plaintiff
also contends that the precedents cited by Saudi Oger do not
apply to her claim because this case involves an "unusual"
situation in which the employee's sexual misconduct had a
business purpose—to help Saudi Oger's client, the Prince, rape
women. However, the Plaintiff must plead more than conclusory
allegations and present sufficient facts to create a reasonable
inference that Ouanes' job and Saudi Oger's business included
sex crimes. *See Sgaliordich v. Lloyd's Asset Mgmt.*, No. 1:10-cv-
03669(ERK), 2011 U.S. Dist. LEXIS 12183, at *12 (E.D.N.Y. Feb.
8, 2011) (granting motion to dismiss because complaint did not
permit "a reasonable inference that the [employees were] . . .
acting consistently with [their] normal job duties with the
purpose of furthering [the employer's] interests.").

However, the support Plaintiff alleges is merely the
accusation itself. In particular, Plaintiff alleges:

- "At all relevant times herein, Defendant Mustapha
  Ouanes was employed by Saudi Oger's 'VIP' unit, which
  existed for the purpose of travelling with and
  catering to the needs and desires of [the Prince]."
  (FAC ¶ 6 (formatting altered from original).)

9

- "This lawsuit arises out of an ongoing wrongful scheme by [the Prince] and Saudi Oger, Ltd. to harass and abuse women. Defendants [the Prince] and Saudi Oger knew or should have known of Defendant Mustapha Ouanes' predisposition to abusing women, his violent propensities, and his sexual harassment of women." (*Id.* at ¶ 12 (formatting altered from original).)

- Defendants [the Prince] and Saudi Oger . . . encouraged [Ouanes'] misconduct so that other employees could similarly abuse, sexually harass and/or molest unsuspecting women lured by Defendant Mustapha Ouanes to [the Prince's] rooms at The Plaza Hotel under false pretenses." (*Id.* at ¶ 14 (formatting altered from original).)

While Plaintiff cites to numerous other allegations in the Amended Complaint in support of her arguments, those allegations in substance are all identical to the ones set forth here.

These assertions fall short of "nudging [Plaintiff's claims] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Noticeably absent from the FAC is any fact that could provide a basis from which to infer that Saudi Oger's business, and Ouanes' job duties, involved methodically luring and drugging women so that they could be raped by the Prince and his entourage. If the Plaintiff is correct that her conclusory assertions are sufficient to state a claim, then any employer

10

could be subjected to vicarious liability for sexual assault based on an allegation that the employer's business involved facilitating rape.

Plaintiff's contention is also unpersuasive because under her theory, Ouanes' crime (rape) has not been shown to be within the scope of his purported job (to lure and drug women for others). In *Haybeck*, 944 F. Supp. 326, the employer operated sex chat rooms. The employee—who was HIV positive—contacted the plaintiff on one of those sites and lured her into having sex. Then-Judge Sotomayor dismissed the complaint, reasoning that "even if [the employee's] conduct arose in part out of his intent to further the [employer's] business . . . in that his sexual relationship with plaintiff . . . arguably encouraged plaintiff to use [more of the chat rooms], there is no 'business purpose' which 'alone' would have compelled [him] either to have sex with plaintiff or to hide from her the fact that he had AIDS." *Id.* at 331.

The Plaintiff finally contends that whether Ouanes' misconduct was within the scope of his employment is a question for a jury. However, respondeat superior claims are also dismissed at the pleading stage. *See, e.g.*, *Haybeck*, 944 F.

11

Supp. at 331 (dismissing vicarious liability claim); *Woods v. CVS*, 2013 U.S. Dist. LEXIS 58764, at *7-8 (S.D.N.Y. Apr. 19, 2013) (finding that "sexual assault claim against [employer] cannot survive either a motion to dismiss or a motion for summary judgment.") (internal citations omitted).

The issue is not whether Ouanes' assault of Plaintiff was within his duties to Saudi Oger, but whether Plaintiff adequately alleged that those duties included, as she claims, the facilitation of sexual violence. In arguing that this motion raises questions for a jury, Plaintiff relies on *Rivello v. Waldron*, 391 N.E.2d 1278 (N.Y. 1979), *Patterson v. Khan*, 240 A.D.2d 644 (2d Dep't. 1997), and *Buck v. Zwelling*, 272 A.D.2d 895 (4th Dep't. 2000). None of these cases, however, involved the fundamental question of whether the plaintiff had sufficiently alleged what the employee's job was. Plaintiff also relies on *Goldwater v. Metro-North Commuter R.R.*, 101 F.3d 296 (2d Cir. 1996), but that decision did not involve a claim for vicarious liability.

The Plaintiff alleges that Ouanes' duties included luring women to the Plaza Hotel for the benefit of the Prince and his entourage. Plaintiff has not alleged any facts to

12

support this accusation, and it is therefore "naked assertion"
devoid of "further factual enhancement" that is insufficient to
sustain a cause of action under *Iqal* and *Twombly*. *See Twombly*,
550 U.S. at 555; *see also Velasquez-Spillers v. Infinity
Broadcasting Corp.*, 51 A.D.3d 427, 427-28 (1st Dep't. 2008)
(rejecting "conclusory" allegations of vicarious liability
against an employer arising from an intentional assault
committed by its employee).

## Negligent Supervision Or Retention Has Not Been Adequately Alleged

In New York, "a claim for negligent hiring,
supervision or retention, in addition to the standard elements
of negligence, requires a plaintiff [to] show: (1) that the
tortfeasor and the defendant were in an employee-employer
relationship; (2) that the employer knew or should have known of
the employee's propensity for the conduct which caused the
injury prior to the injury's occurrence; and, (3) that the tort
was committed on the employer's premises or with the employer's
chattels." *Biggs v. City of New York*, 2010 U.S. Dist. LEXIS
121332, at *34 (S.D.N.Y. Nov. 15, 2010) (citations and internal
quotations omitted).

13

The FAC does not contain a factual allegation showing that Saudi Oger "knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence." *Biggs*, 2010 U.S. Dist. LEXIS 121332, at *34 (internal quotation mark omitted). The FAC asserts that "[d]uring the course of his employment, Defendants . . . knew or should have known of [Mr. Ouanes'] predisposition for abusing women, his violent propensities, and his status as a sexual predator, yet did nothing to stop it." (*See* FAC ¶ 13.) Notwithstanding Ouanes' alleged predisposition for sexual violence, and the FAC's allegation that "[a] reasonable background check would have reflected the same" (*id.* ¶ 12), the FAC does not allege (i) a single prior act or allegation of sexual misconduct committed by Ouanes; or (ii) a fact suggesting that Saudi Oger knew or should have known of any such prior acts.

The absence in the FAC of factual allegations concerning Ouanes' propensity for sexual assault and Saudi Oger's knowledge is fatal to Plaintiff's negligence claim and warrants dismissal. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."); *see also Mitsui Fudosan*, 2 F. Supp. 2d at 532-33 (S.D.N.Y. 1998)

14

("Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss.") (citation omitted); *Doe v. Guthrie Clinic Ltd.*, No. 11-cv-6089T, 2012 U.S. Dist. LEXIS 20507, at *19 (W.D.N.Y. Feb. 17, 2012) ("In the instant case, there is no credible, nonconclusory allegation that [the employer] knew or should have known that [an employee nurse] would breach her duty of confidentiality with respect to any patient's private health information. Accordingly, plaintiff has failed to state a claim for negligent hiring."); *Herskovitz v. Equinox Holdings, Inc.*, No. 151065/2013, 2013 N.Y. Misc. LEXIS 2371, at *22 (N.Y. Sup. Ct. June 3, 2013) (allegation that defendant "knew or should have known of [the employee's] propensity to commit injury" deemed conclusory and insufficient to support negligent hiring claim).

New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employee. *See K.I.*, 256 A.D.2d at 191-92 ("[V]ague allegations that the teachers 'encouraged' plaintiff's personal relationship with [the employee] do not suffice to impose liability on the Board, as it would not have been foreseeable to the teachers that [the employee] would harm

15

plaintiff."); *Jessica H. v. Equinox Holdings, Inc.*, No. 103866/08, 2010 N.Y. Misc. LEXIS 1215, at *13 (N.Y. Sup. Ct. Jan. 4, 2010) ("[A] negligent retention theory is not viable in a sexual abuse case, unless the employer had notice of prior allegations of an employee's improper conduct and failed to investigate the allegations.") (citation omitted).

The prior misconduct, moreover, must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient. *See Anderson v. Adam's Mark Hotels & Resorts*, No. 99-1100, 2000 U.S. App. LEXIS 6949, at *3, *7-8 (10th Cir. 2000) (prior sanctions against supervisor for sexually harassing other employees by attempting to date them did not establish his propensity to commit a sexual assault, where plaintiff failed to allege that the employer "had reason to know that [the supervisor] would cause the kind of harm alleged in this case"); *Bowen v. Patrick*, No. 11 Civ. 479 (JMF) (GWG), 2012 U.S. Dist. LEXIS 123058, at *42 (S.D.N.Y. Aug. 29, 2012) (allegation that "[a doctor employee] stood idly by and watched an inmate with a severe and bleeding head injury be maliciously beaten by a correction officer . . . does not show that [the doctor] was predisposed to breaching any duty to provide medical care") (internal quotation

16

marks omitted); *Milosevic v. O'Donnell*, 89 A.D.3d 628, 629 (1st Dep't 2011) (allegations of a "culture" of alcohol use at company events insufficient to show that employer "was aware of the CFO's violent propensities when intoxicated or of the possibility of an assault"); *Naegele v. Archdiocese of N.Y.*, 39 A.D.3d 270, 270 (1st Dep't 2007) ("conclusory allegations" that "priests accept money and things of value from their parishioners" were insufficient "to show that the Archdiocese knew or should have known of [the priest's] propensity to commit the [fraud] alleged").

In addition, the FAC does not allege a fact to show that Saudi Oger knew or should have known of any prior assault. *See Haybeck*, 944 F. Supp. at 332 ("What plaintiff fails to allege, however, is that [the employer] knew that [its employee] was having unprotected sex with customers without informing them that he carried the AIDS virus."). Plaintiff cannot cure that fatal deficiency by suggesting that a "reasonable background check" would have revealed Ouanes' predisposition for sexual assault because no facts, specific or otherwise, are alleged as to what such a background check would have in fact revealed. As a matter of law, Saudi Oger was under no duty to conduct a background check of Ouanes. *See Yeboah v. Snapple, Inc.*, 286

17

A.D.2d 204, 205 (1st Dep't 2001) ("Notwithstanding the corporate defendants' failure to investigate [its employee's] criminal background, liability cannot be charged to the corporate defendants on the ground of negligent hiring and supervision. An employer is under no duty to inquire as to whether an employee has been convicted of crimes in the past.") (citation omitted).

Plaintiff's negligent supervision and retention claims also fail because the underlying tort did not occur anywhere near Saudi Oger's premises or with its chattels as alleged by Plaintiff. Instead, as alleged (FAC ¶¶ 24, 30), the sexual assault occurred at the Plaza Hotel. In *Haybeck*, for example, the court dismissed the plaintiff's negligent supervision claim—even though the plaintiff met the employee on a sex chat room owned by the employer—because "the conduct complained of, whether it is the act of sex or [the employee's] failure to disclose his HIV status, unquestionably took place outside the employer's premises and without the employer's chattels." 944 F. Supp. at 332; *see also Ehrens v. Lutheran Church*, 385 F.3d 232, 236 (2d Cir. 2004) (affirming dismissal of negligent supervision claim against church when minister's acts of sexual misconduct against plaintiff occurred off church premises); *"John Doe 1" v. Board of Educ. of Greenport Union Free Sch. Dist.*, 100 A.D.3d

18

703, 705-06(2d Dep't 2012) (dismissing negligent hiring and supervision claims where the school employee's sexual misconduct occurred "off of school grounds"); *K.I.*, 256 A.D.2d at 191 (same); *Milosevic v. O'Donnell*, No. 114612/09, 2010 N.Y. Misc. LEXIS 4848, at *4 (N.Y. Sup. Ct. June 17, 2010), *aff'd*, 89 A.D.3d 628 (1st Dep't 2011) (dismissing negligent supervision claim where employer "neither owned nor operated the premises in which plaintiff allegedly was injured").

In her opposition, Plaintiff concedes that she has no basis to allege that Ouanes engaged in any prior bad acts. (*See* Opp. at 4 ("Plaintiff maintains that Saudi Oger knew or should have known that [Mr. Ouanes] was prone to harming [Plaintiff] because he more than likely had behaved similarly in the past.").) If Ouanes had not committed any sexual assault before, then, as a matter of law, Saudi Oger could not have known that he had a propensity for such misconduct. Citing *Jones v. Trane*, 153 Misc. 2d 822 (N.Y. Sup. Ct. 1992), Plaintiff suggests that whether an employer knew or should have known of its employee's predisposition for wrongdoing is a question that is not appropriate for resolution on a motion to dismiss. That decision, however, did not concern whether the plaintiff had sufficiently pleaded the employer's actual or constructive

19

knowledge. It instead turned on whether the employer (a church) had First Amendment protection against the plaintiff's claims. *Id.* at 830.

Plaintiff argues that notice of Ouanes' predisposition can still be inferred alleging that: (i) Saudi Oger and Ouanes were in the business of aiding and abetting sexual violence; (ii) that at least three other Saudi Oger employees were present the night Ouanes drugged and assaulted Plaintiff; (iii) and that DNA evidence suggests that other Saudi Oger employees had raped her too. (Opp. at 4.)

Plaintiff has not alleged any facts showing that the other men who were present were Saudi Oger employees. (*See* FAC ¶¶ 25-29.) In fact, she alleges that one of them was an employee of the Prince. (*See id.* at ¶ 26.) Further, these allegations concern actions that other, unidentified men took on the same night that Ouanes sexually assaulted Plaintiff. However, despite the reprehensibility of the sexual assault by Ouanes, the allegations do not relate to any prior acts by Ouanes, or even to Ouanes himself, and thus they do not show that Saudi Oger knew or should have known before the attack that Ouanes was predisposed to sexual violence.

20

Plaintiff also argues that claims for negligent supervision and retention do not require a plaintiff to allege specific prior misconduct by the employee, but no authority is cited for that proposition. Such claims require specific allegations of the employee's past wrongdoing to provide a basis from which to infer the employer's knowledge. *See Krystal G. v. Roman Catholic Diocese of Brooklyn*, 34 Misc. 3d 531, 538 (N.Y. Sup. Ct. 2011) (sustaining assault-related claim where school administrators sought to bar employee for excessive physical contact with children); *Lee v. Overseas Shipholding Group, Inc.*, No. 00 CIV. 9682(DLC), 2001 WL 849747, at *10 (S.D.N.Y. July 30, 2001) (finding that the plaintiff had alleged prior complaints made personally to management regarding employee misconduct); *Sharp v. Town of Greece*, No. 09-CV-6452, 2010 WL 1816639, at *8 (W.D.N.Y. May 3, 2010) (allegations that employer hid evidence of employee's reckless behavior); *Vione v. Tewell*, 12 Misc. 3d 973, 979-80 (N.Y. Sup. Ct. 2006) (plaintiff alleged employer warned for two and half years of employee's improper actions). In support of this argument, Plaintiff relies on *Sharon B. v. Reverend S.*, 244 A.D.2d 878 (4th Dep't 1997). That decision involved a New York state procedure—N.Y. CPLR § 3211(d)—that does not apply here. *See id.* at 879. While "[n]o statutory

requirement exists that negligent supervision claims be plead
with specificity . . . bare legal conclusions and/or factual
claims flatly contradicted by documentary evidence should be
dismissed . . . ." *Krystal G.*, 933 N.Y.S. 2d at 523 (citations
omitted). Plaintiff's allegations, here, only concludes that
Saudi Oger knew or should have known before the attack of
Ouanes' predisposition to sexual violence, there is no
allegation of any past evidence of sexual violence. The FAC does
not contain anything more than bare legal conclusions.


        Plaintiff contends that she should be given an
opportunity to take discovery because "almost all of the
conclusive information regarding notice lies within Defendants'
[sic] exclusive control." (Opp. at 6.) As with respondeat
superior claims, courts dismiss negligent supervision and
retention claims at the pleading stage, before discovery as set
forth above. *See Milosevic*, 89 A.D.3d at 629 ("Dismissal of the
[negligent hiring] claims cannot be avoided by speculation as to
what discovery might reveal."); *Herskovitz*, 2013 N.Y. Misc.
LEXIS 2371, at *24 ("Plaintiff's alleged need for discovery,
which may reveal evidence of the prior incidents or other facts
necessary to sustain her claim for negligent hiring, is
speculative as it is unsupported by the allegations in the

complaint and plaintiff does not submit an affidavit.")
(citations omitted).

The Plaintiff also contends that there is no
requirement that the tort must have occurred on the employer's
property and suggests that courts have mistakenly imposed a
premises element to negligent supervision and retention claims
because they misread a New York Court of Appeals decision,
*D'Amico v. Christie*, 518 N.E.2d 896 (N.Y. 1987). However, in
*D'Amico*, the Court of Appeals explicitly noted that the "duty on
the part of an employer to control the conduct of its employee
even outside the scope of employment . . . . as formulated in
the Restatement, is limited to torts committed by employees on
the employer's premises or with the employer's chattels, and
similarly would be unavailing to plaintiffs because the accident
occurred off the employer's premises and did not involve the
employer's property." *Id.* at 901-02.

Moreover, Plaintiff's reliance on *Krystal G.*, 34 Misc.
3d 531, instead of *D'Amico* is misplaced. There, the court found
that negligent supervision and related claims do not require the
tort to have been on the employer's premises. *Id.*, at 539. The
court reasoned that *D'Amico*—which reached the opposite result—

23

was not controlling because that decision was based on an
interpretation of the Dram Shop Act, which, in the court's
opinion, raised issues outside of common law. *Id.* However, the
New York Court of Appeal's decision in *D'Amico* involved several
claims, only one of which was based on the Dram Shop Act. *See*
*D'Amico*, 518 N.E.2d at 898-99. The remaining claims were decided
under common law, including common law negligence. *See id.* at
897, 901-02. *Krystal G.* is thus an outlier on this issue, and
the vast weight of authority establishes a premises element to
negligent supervision and retention claims. *See Ehrens v.*
*Lutheran Church*, 385 F.3d 232, 236 (2d Cir. 2004) (affirming
dismissal of negligent supervision claim where sexual assault
occurred off premises).

    Plaintiff also contends that the sexual assault
effectively occurred on Saudi Oger's premises because Saudi Oger
"controlled" the floors at the Plaza Hotel where the attack
actually happened. While Plaintiff cites to numerous allegations
as showing "control" (*see* FAC ¶¶ 4, 9, 12, 14, 17, 24, 62, 64,
79, 86, 87), these allegations assert only that the Plaza Hotel
was the site of the sexual assault, that the hotel was partially
owned by the Prince's cousin and that Ouanes' duties included
regulating the temperature on the Prince's floor. These

24

allegations do not sufficiently allege that Saudi Oger exercised any dominion or control over the Plaza Hotel. Because the attack occurred there, not Saudi Oger's premises, Plaintiff's negligent supervision and retention claims are inadequately alleged.

**Plaintiff's Claims For Punitive Damages Are Dismissed**

Plaintiff seeks punitive damages in the FAC (*see* FAC ¶¶ 69, 84, 90) against Saudi Oger for her respondeat superior and negligent supervision and retention claims. Punitive damages are available when there is "conduct that evidences a high degree of moral culpability, is so flagrant so as to evince a conscious disregard for the rights of others." *Evans v. Stranger*, 307 A.D.2d 439, 440 (3d Dep't 2003) (citations omitted). But as analyzed above, Plaintiff has failed to adequately allege her underlying claims. Gven such, Plaintiff's request for punitive damages is dismissed. *See Excelsior Capital LLC v. Allen*, 536 Fed. App'x 58, 60 (2d Cir. 2013) ("[A] request for punitive damages in New York is nonviable absent a valid claim for compensatory damages.") (internal quotation marks and citations omitted).

## Conclusion

For the reasons set forth above, Defendant Saudi Oger's motion to dismiss is granted. The FAC's First, Second and Third causes of action against Saudi Oger are dismissed without prejudice with leave to replead within twenty days.

It is so ordered.

**New York, NY**
**April 5 , 2014**

_____

**ROBERT W. SWEET**