UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X
JANE DOE,

                Plaintiff,

    -against-

HRH PRINCE ABDULAZIZ BIN FAHD ALSAUD,
SAUDI OGER LTD, and MUSTAPHA OUANES,

                Defendants.
----------------------------------------X

13 Civ. 571

OPINION

A P P E A R A N C E S:



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/10/17

    Attorney for Plaintiff

    MORELLI LAW FIRM PLLC
    777 Third Avenue, 31st Floor
    New York, NY 10017
    By: Sara A. Strickland, Esq.

    Pro Se Defendant

    MUSTAPHA OUANES
    12-A-2814
    Eastern Correctional Facility
    P.O. Box 338
    Napanoch, NY 12458

1

**Sweet, D.J.**

This action arises from Defendant Mustapha Ouanes'
("Ouanes" or the "Defendant") rape and assault of the Plaintiff
Jane Doe ("Doe" or the "Plaintiff") at The Plaza Hotel on
January 26, 2010. The Plaintiff's motion for summary judgment
was granted on December 13, 2016 (the "Opinion"). *See People v.
Ouanes*, 123 A.D.3d 480 (1st Dep't 2014), *leave to appeal denied*,
25 N.Y.3d 1075 (2015); *see also Doe v. Alsaud*, 224 F. Supp. 3d
286 (S.D.N.Y. 2016). The Plaintiff now seeks compensatory and
punitive damages.

The Plaintiff is to be awarded $1,250,000 in
compensatory damages — $850,000 for past pain and suffering and
$400,000 for future pain and suffering — and $1,000,000 in
punitive damages.

## I. **Prior Proceedings**

The Opinion set forth the proceedings prior to this
motion, and they are restated in relevant part here. *See Alsaud*,
224 F. Supp. 3d at 289.

2

In February 2012, following a two-week trial in New York Criminal Court, a jury convicted Ouanes of five criminal charges: rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree, assault in the second degree, and attempted sexual abuse in the first degree. *See People v. Ouanes*, 123 A.D.3d 480 (1st Dep't 2014), *leave to appeal denied*, 25 N.Y.3d 1075 (2015). Ouanes was sentenced to ten years in prison. *Id.*

In 2013, the Plaintiff filed this civil action against the Defendant. The Plaintiff moved for summary judgment as to Ouanes' liability in June 2016, and the motion was granted on the ground of collateral estoppel on December 13, 2016. In June 2017, the Plaintiff moved for compensatory and punitive damages. This motion was taken on submission on August 15, 2017, at which point the motion was deemed fully submitted.

## II. **The Facts**

The egregious details of the January 26, 2010 attack and the effects on the Plaintiff are set forth below, restated as provided by the Plaintiff. *See* Pl.'s Br. Exs. D & E.

3

In January 2010, the Defendant drugged and sexually assaulted the Plaintiff and her friend Mary Doe in a hotel room at The Plaza Hotel. *See* Pl.'s Br. Ex. D ¶¶ 13-21. Ouanes repeatedly raped the Plaintiff and sodomized her. *See id.* At multiple points during the attack, which lasted several hours, the Plaintiff tried to escape Ouanes' grasp but was unable to do so. *See id.* When the two women regained consciousness after the attack, Mary Doe dialed 911 while the Defendant stared at them coldly and nonchalantly said: "Go ahead, call the police. Do whatever you want." *See id.* ¶¶ 23, 24. The Plaintiff states that the Defendant's heinous and disgusting violation of her body left her feeling horrified and worthless. *See id.* Ex. E ¶ 3. The Plaintiff also states that although she does not remember all of the attack because she was so heavily drugged, what she does recall about the events of January 26, 2010 will stay with her forever. *See id.*

After the police arrived, the Plaintiff was taken to the emergency room at Roosevelt Hospital where she underwent an examination and rape kit. *See id.* Ex. D ¶ 26 & Ex. E ¶ 3. She describes her examination at Roosevelt Hospital as "almost as painful as child birth." *See id.* Ex. E ¶ 3. Ms. Doe also states that as a result of the attack, she had multiple contusions in and around her vagina, anus, and breasts, as well as bruises

4

revealing handprints at her waist and hips. *See id.* Ex. D ¶ 26.

She was bleeding from her rectum and her jaw was sore. *See id.*

Ms. Doe avers:

> I will never forget the horrific taste in my mouth and
> begging for water [at Roosevelt Hospital], however as
> part of the exam I had to wait until all the necessary
> swabs for the rape kit were completed. When I received
> the phone call from the ADA stating that the "horrible
> taste" was fecal matter that [was] swabbed from my
> mouth, I almost wanted to crawl out of my own skin.

*See id.* Ex. E ¶ 3. The Plaintiff also received care at

the Roosevelt Hospital AIDS clinic where she was prescribed

antivirals and an antiemetic in case she had been exposed to

HIV/AIDS during the attack. *See id.* ¶ 4. She was also advised

that the medications carried the risk of permanent liver and

kidney dysfunction and were so strong that she spent the

majority of the next two weeks nauseous or vomiting. *See id.*

In addition to her significant and disturbing physical

injuries, the Plaintiff suffered and continues to suffer severe

emotional distress as a result of the Defendant's attack. Her

affidavits detail her emotional injuries and the myriad ways in

which the Defendant's vicious actions have upended her life. *See*

*id.* Exs. D & E. Specifically, as a result of the Defendant's

attack, the Plaintiff was diagnosed with complex Post-Traumatic

Stress Disorder ("PTSD"), anxiety disorder, and massive

depression, which persist today. *See id.* Ex. D ¶ 27 & Ex. E ¶¶

8-9, 11. The Plaintiff states that after the attack, the impacts of trauma were so invasive and omnipresent that she could no longer carry out her daily activities and she fell into a deep depression and felt constant anxiety. *See id.* Ex. E ¶ 6. As a result of these thoughts and feelings, Ms. Doe attempted to take her own life in 2010. *See id.* She explains: "at that time, I honestly wanted to die because I already felt as if I was dead." *Id.* The Plaintiff was admitted to Princeton House Behavior Health's Woman Trauma program for several weeks and remained there until she was called to court for the Defendant's two-week criminal trial. *See id.* ¶ 7. The Plaintiff describes her cross-examination over three days and the display of graphic, very personal photographs of her body at the Defendant's criminal trial as jarring, humiliating, and devastating for her and her family. *See id.* ¶ 8.

Ms. Doe also describes the PTSD, anxiety, and depression as completely altering her life and the way she identified herself in the world. *See id.* ¶ 12. She explains:

> The sexual assault has robbed me of my confidence and my self-esteem. My dignity, my autonomy, and my self-respect have all been compromised as a result of the crimes carried out against me. My faith in myself and my faith in the world have been decimated. I am not the person I was before the assault and I will never be the same as a result of what has been inflicted upon me. I struggle to remember what life was like when things like safety could be taken for granted. I

6

am afraid I cannot live up to the expectations of
those who knew me before. I struggle to connect to
people in good faith and to trust them. I struggle to
find the energy, on so many days, to fight through the
difficulties sexual assault has created for me and
reach out to others. Solitude and isolation became my
new safety and I became socially isolated.

*Id.* At the time of the assault, the Plaintiff was a
nursing student living in Brooklyn and she supported herself and
paid for school by working in Manhattan as a bartender. *See id.*
Ex. D ¶ 1 & Ex. E ¶ 5. As a result of the sexual assault and the
PTSD, depression, and anxiety it caused, Ms. Doe lost her job
and her apartment in Brooklyn, could not immediately return to
nursing school, and had to move back to New Jersey to live with
her parents. *See id.* Ex. D ¶ 27 & Ex. E ¶¶ 5, 15. She attempted
to return to nursing school in 2012, but had to medically
withdraw to take care of herself. *See id.* Ex. E ¶ 15. Ms. Doe
returned in 2014 and hopes to finally complete nursing school
later this year, more than seven years after the attack. *See id.*
The Plaintiff describes her attempts to complete school since
the attack as a "struggle every step of the way." *Id.* She has
also been unable to maintain full time work since the attack.
She explains:

To this day, seven years since the assault, I have not
been able to work full-time. The physical and
psychological impacts of the assault continue to
interfere with my daily life and prevent me from
achieving what used to come so easily. I do not know
when I will be in a position to return to full-time
work. In 2010, I took a job working as an assistant

7

manager at Boom Restaurant on Spring St. NYC. I had to resign from my position due to depression and anxiety. I no longer had the social skills I needed to continue to work in such a high demanding social atmosphere. I resigned after a few months of employment. I had been a part owner in [] a nail salon with my mother and in 2012, we had to liquidate the business due to symptoms consistent with my PTSD diagnosis. The truth is I will not know if I will be able to ever work full-time again. I plan to give it my all, I now have a new reason to live, that is solely for my son, [whose] life depends on me. I struggle to be strong each day . . . .

Not being able to work full-time for over seven years now has had a significant financial impact on my life – severely restricting my earning capacity and costing me tens of thousands of dollars in lost income. I have been dependent on family and friends for assistance when I could not hold a job of my own. I will also never get the years I suffered so immensely (my late twenties) back. Prior to the sexual assault I was an outgoing, social, hardworking individual with dreams of one day becoming an RN. Not being able to work full-time is humiliating and distressing. Full-time employment is not just a way to make a living, it is a way to participate in and contribute to society.

*Id.* ¶¶ 9, 10. The sexual assault and its effects

continue to haunt the Plaintiff to this day. She states:

I presently see a psychiatrist every three months for support with the symptoms of post-traumatic stress. On a daily basis, I still struggle with hyper-vigilance, the repetitive and intrusive thoughts, the flashbacks, sleeplessness, insomnia, nightmares, difficulties in concentration, and memory problems. I continue to rely on psychiatric medications to support me to manage these symptoms. The persistence and invasiveness of post-traumatic stress wears me down and consumes so much of my energy that full-time work is not a possibility at this time. I also still seek weekly or bi-weekly counseling to help cope with PTSD.

*Id.* ¶ 11. She further avers:

> [T]he impacts of sexual assault continue to immensely
> affect me, years after the assault, on a daily basis.
> Not a day goes by that what was done to me does not
> interfere with my life or limit the life I lead in
> some way. Sexual assault has cost me in profound ways.
> It has placed my life on a completely different path
> from the one I was on, had I not been assaulted. I
> have endured significant loss and these losses cannot
> be undone.

*Id.* ¶ 16. The record evidence establishes that the
Defendant's heinous sexual assault caused the Plaintiff to
suffer severe physical and emotional injuries and immensely
affected her life.


## III. **The Applicable Standard**


The United States Supreme Court has held that the
common law manner of the trier of fact assessing compensatory
and punitive damages "predates and does not violate the Due
Process Clause of the XIV Amendment, U.S. Constitution." *Deborah
S. v. Diorio*, 153 Misc. 2d 708, 710, 583 N.Y.S.2d 872 (Civ. Ct.
1992), *aff'd as modified*, 160 Misc. 2d 210, 612 N.Y.S.2d 542
(App. Term 1994). "Compensatory damages recoverable for sexual
assault . . . include compensation for the injury itself,
conscious pain and suffering including mental and emotional
anxiety which can be based on the plaintiff's subjective
testimony plus special damages, which need not be pleaded." *Id.*
at 715, 583 N.Y.S.2d at 872 (citing *Laurie Marie M. v. Jeffrey*

T.M., 159 A.D.2d 52, 54, 559 N.Y.S.2d 336, 337 (1990) *aff'd sub nom. Laurie Marie M. v. Jeffrey T.M.*, 77 N.Y.2d 981, 575 N.E.2d 393 (1991)).

Punitive damages are appropriate under New York law where "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490 (1961). An award of punitive damages "must be based on 'quasi-criminal conduct or of such utterly reckless behavior' or a demonstrated 'malicious intent' to injure the plaintiff, or gross wanton or willful fraud or other morally culpable conduct." *Deborah S.*, 153 Misc. 2d at 711, 583 N.Y.S.2d at 875 (citing *Laurie Marie M.*, 159 A.D.2d at 58, 559 N.Y.S.2d at 336).

## IV. The Plaintiff is Awarded $1,250,000 in Compensatory Damages

The Plaintiff's testimony amply establishes that the Defendant's attack has for the past seven years caused Ms. Doe serious physical, psychological, emotional, and financial trauma. This Court's present duty is to assess the financial compensation Ms. Doe is entitled to in light of the Defendant's

physical and emotional violations of the Plaintiff's well-being and their lasting effects.

The Supreme Court has acknowledged and this Court similarly recognizes that "[s]hort of homicide, [sexual assault] is the ultimate violation of self. It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Although sexual assault] is very often accompanied by physical injury to the [victim, it] can also inflict mental and psychological damage." *Coker v. Georgia*, 433 U.S. 584, 597-98 (1977) (internal quotations omitted).

Quantifying a loss to Ms. Doe's physical autonomy and emotional security is difficult. "Unlike pecuniary losses, these damages are, by their nature, not susceptible to mathematical computation." *Mathie v. Fries*, 935 F. Supp. 1284, 1304 (E.D.N.Y. 1996), *aff'd,* 121 F.3d 808 (2d Cir. 1997) (noting that "the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value."). Under New York law, "[t]he measure of damages for pain and suffering and emotional distress is fair and reasonable compensation to be fixed by the trier of fact in the light of all the evidence in the case." *Id.* The Court may

11

consider many factors in reaching this determination, including "the social and emotional betrayal, humiliation and isolation suffered by the victim as well as the threat to the victim's self-esteem and physical, psychic and emotional integrity and health, in addition to actual therapeutic and medical expenses." *Id.* at 1306. This Circuit has provided that "[w]ith respect to mental distress damages, we have been willing to uphold substantial awards where warranted." *Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) (awarding $650,000 in compensatory damages where the plaintiff was involved in a minor parking dispute, was arrested, spent 60 hours in jail and sustained head trauma, two displaced vertebrae, and a cracked rib).

Determining an amount of compensatory damages is "an exercise in pretend exactitude." *Offei v. Omar*, No. 11 Civ. 4283(SAS)(MHD), 2012 WL 2086294, at *7 (S.D.N.Y. May 18, 2012). Guidance may be found in prior awards involving similar torts, similar injuries, or both. *See In re Air Crash Near Nantucket Island*, 307 F. Supp. 2d 465, 469 (E.D.N.Y. 2004). However, although "[d]amage awards in analogous cases provide an objective frame of reference, . . . they do not control [the Court's] assessment of individual circumstances." *Id.* (quoting *Moore v. M/V Angela*, 353 F.3d 376, 384 (5th Cir. 2003)). Courts in this Circuit and State have upheld large compensatory damage

12

awards for sexual assault and rape victims, yet interestingly, such awards vary drastically – even where cases share similar facts. Nevertheless, the following cases offer a helpful starting point:

In *Ortiz v. N.Y. City Hous. Auth*, 22 F. Supp. 2d 15, 40 (E.D.N.Y. 1998), *aff'd,* 198 F.3d 234 (2d Cir. 1999), the Second Circuit upheld a jury award of $2 million for past pain and suffering and $1 million for future pain and suffering for a 47-year old plaintiff who was raped at gunpoint in the stairwell of her apartment building.

In *Splawn v. Lextaj Corp., NV*, 197 A.D.2d 479, 603 N.Y.S.2d 41 (1993), the court upheld a compensatory damage award of $1.8 million for past pain and suffering and $200,000 for future pain and suffering for a plaintiff who was raped in a hotel room. Similarly, in *Pantages v. L.G. Airport Hotel Assocs., Inc.*, 187 A.D.2d 273, 589 N.Y.S.2d 426 (1992), the plaintiff "was brutally raped, sodomized and assaulted by three men" in a hotel room, and the court upheld an award of $1.5 million for past pain and suffering and $375,000 for future pain and suffering. In *Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132, 138 (2d Cir. 1993), the court upheld a jury award of

$1.75 million for a woman who was robbed and subjected to attempted rape.

In *Miller v. State*, 62 N.Y.2d 506, 509, 467 N.E.2d 493, 495 (1984), the plaintiff, a 19-year-old college student was confronted by a man wielding a butcher knife in her dormitory laundry room at 6:00 am. The defendant blindfolded and pulled the plaintiff into a dormitory room where he raped her twice at knifepoint and threatened her with mutilation and death. *Id.* Upon remittal the court concluded that "[c]onsidering the horror of the rape itself and the consequences that followed, an award of $400,000 is in order." *Miller v. State*, 110 A.D.2d 627, 628, 487 N.Y.S.2d 115, 116 (1985).

*Phillip v. Goulbourne*, N.Y.L.J. August 4, 1995 (Sup. Ct. West Co. 1995) (not otherwise reported) involved three children who were raped and sodomized by their mother's fiancé and thereafter suffered from post-traumatic stress disorder. The court awarded each plaintiff $500,000 in compensatory damages. *Id.*

In *Deborah S. v. Diorio*, 153 Misc.2d at 715, 583 N.Y.S.2d at 872, the defendant raped, sodomized, sexually assaulted, and threatened to kill the plaintiff. *Id.* The

14

plaintiff succumbed to forced sexual intercourse for one to two hours. *Id.* The court looked to "[t]he social and emotional betrayal and humiliation, the isolation, the threat and violation to her self-esteem, physical, psychic and emotional integrity and health, the fear for her life, the utter sense of hopelessness and helplessness, loss of income and therapeutic and medical expenses" in assessing compensatory damages. *Id.* at 716. The court determined that the plaintiff was entitled to $100,000 for the incident, plus pain and suffering, totaling $170,495 in compensatory damages. *Id.*

In *Offei v. Omar*, 2012 WL 2086294, at *1, a hotel room attendant was sexually assaulted by a guest in a hotel room while she was in the course of carrying out her duties. After the plaintiff entered the room to clean it, the defendant seized her in a bear hug, kissed her on the lips, squeezed her breasts and rubbed his clothed penis against her. *Id.* The plaintiff tried to escape as he grabbed her once again. *Id.* Following the incident, the plaintiff suffered a series of panic attacks, "was unable to sleep, was frightened, and cried frequently, and in only a few days she lost seven pounds." *Id.*, at *2. The court awarded the plaintiff $250,000 in compensatory damages in light of "the nature and length of plaintiff's emotional suffering, including its continuation through the period of the hearing,

15

and its exacerbation by a variety of cultural and other circumstances." *Id.*, at *7. The court specifically noted that extreme, lasting emotional distress was sufficient to warrant such an award even though the assault was a one-time event and did not involve a rape or any overt effort to disrobe the plaintiff. *Id.*, at *6.

In *Laurie Marie M. v. Jeffrey T.M.*, 159 A.D.2d at 62, 559 N.Y.S.2d at 336, the plaintiff who had been sexually touched by her stepfather on about twenty occasions when she was a child was awarded $100,000 in compensatory damages.

As noted, there is significant variation for compensatory awards to victims of sexual assault. The guiding language is that the award be "fair and reasonable compensation" in light of the evidence. The record establishes that as a result of the Defendant's attack, the Plaintiff suffered severe physical injuries, extreme emotional distress — including PTSD, depression, and anxiety that persists today — and a complete upending of her life. The Plaintiff's past emotional trauma is evidenced by her attempted suicide, inability to maintain full time work since the attack, loss of self-esteem, autonomy, self-dignity, and self-respect, in addition to her lack of faith in herself and the world. These psychological and emotional

symptoms have persisted seven years since the date of the attack.

In light of the disturbing specifics of this attack, the totality of the evidence, and the precedent in this Circuit and State, Plaintiff Doe will be granted judgment in the amount of $850,000 for past pain and suffering and $400,000 for future pain and suffering, for a total compensatory damage award of $1,250,000.[1]

## V.   **The Plaintiff is Awarded $1,000,000 in Punitive Damages**

The Plaintiff also seeks an award of punitive damages. Under New York law, punitive damages are appropriate if the trier of fact concludes that "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him." *Walker*, 10.N.Y.2d at 404, 223 N.Y.S.2d at 490; *see also Laurie Marie M.*, 159 A.D.2d at 52, 559 N.Y.S.2d at 336 (quoting *Maitrejean v. Levor Prof. Corp.*, 87 A.D.2d 605, 606, 448 N.Y.S.2d 46, *aff'd,*

---

[1] The Defendant claims that the Plaintiff's motion for damages is "illusive" as he has "no personal fortune, real estate or any worth mentioning property." *See* Def.'s Letter, ECF No. 98. Notwithstanding this claim the Plaintiff is entitled to judgment and the possibility of enforcement.

57 N.Y.2d 902, 442 N.E.2d 1274 (1982)) ("An award of punitive damages must be based on 'quasi criminal conduct or of such utterly reckless behavior' or a demonstrated 'malicious intent' to injure the plaintiff, or gross, wanton, or willful fraud or other morally culpable conduct."). Moreover, "the New York courts have shown a willingness to impose such an award in the case of sexual assaults, even in the absence of a fiduciary relationship." *Offei*, 2012 WL 2086294, at *7.

As for determining the amount of an award, this question "reside[s] in the sound discretion of the original trier of the facts." *Deborah S.*, 153 Misc. 2d at 711, 583 N.Y.S.2d at 875 (citing *Walker*, 10 N.Y.2d at 405). Moreover, "[t]here is no formula by which punitive damages are fixed." *Id.*; *see also Ahrens v. Stalzer*, 4 Misc. 3d 1013(A), 791 N.Y.S.2d 867 (Dist. Ct. 2004) (noting that a punitive damage award "does not have to have any relationship to an award for compensatory damages."). Nevertheless, certain considerations may guide the court's determination, including the following: "[the] defendant's motive; the existence or absence of malice or intentional disregard to plaintiff's rights or reckless indifference thereto; the nature, quality and duration of harm inflicted upon plaintiff; defendant's financial wealth or assets; and the degree of deterrent resulting from a punitive

18

award." *Offei*, 2012 WL 2086294, at *7 (citing *Deborah S.*, 153 Misc.2d at 716, 583 N.Y.S.2d at 878). A look to analogous cases once again offers useful insights:

In *Ahrens v. Stalzer*, 4 Misc. 3d at 1013(A), 791 N.Y.S.2d at 867, the court awarded the plaintiffs $3,000,000 in punitive damages where the defendant broke into the plaintiffs' home while they were out of town, flooded the house, stole six family photo albums and the wife's bra and underwear, and smeared the walls with defamatory writing about the husband having an affair. The defendant's conduct caused the family to be ripped apart by distrust, to lose friends and neighbors on account of suspecting them, and led the young children to develop severe fears of strangers. *Id.* The court noted that "[t]he damage that defendant Stalzer caused was not remedied when he was arrested or when the plaintiffs' home was repaired. The damage continues to date and will continue indefinitely." *Id.*

In *Offei*, 2012 WL 2086294, at *7, the court awarded the plaintiff $100,000 in punitive damages where the defendant groped the plaintiff as she was attempting to clean his hotel room. The court provided that "Mr. Omar's misconduct, although brief, had very serious long-term consequences for the plaintiff

19

and her family, and was directed at someone whom he undoubtedly perceived as vulnerable and hence perhaps compliant to his wishes or at least fearful of complaining." *Id.*

The court in *Deborah S. v. Diorio*, 153 Misc.2d at 716, 583 N.Y.S.2d at 878, noted that the defendant's criminal conviction and "sudden Dr. Jekyll-Mr. Hyde transformation upon being sexually rebuffed from a gentle person to a raging animal showed utter reckless behavior." *Id.* Moreover, the defendant's "threatened and actual use of a sharp knife upon plaintiff's person, necessitating medical and psychological treatment, demonstrated 'malicious intent' to injure plaintiff." *Id.* The Court concluded that an award of $200,000 "serve[d] as a warning to others." *Id.* at 715, 583 N.Y.S.2d at 878.

The sexual violence committed by the Defendant undeniably constitutes morally reprehensible or utterly reckless behavior making a punitive damage award proper. Not only did the Defendant physically and sexually abuse the Plaintiff in the most violating way, but he shattered the Plaintiff's emotional well-being. The Plaintiff became severely depressed and was robbed of her faith in humanity as a direct result of the Defendant's attack. The Defendant's conduct is made even more objectionable based on his belief that his relationship to the

20

Prince of Saudi Arabia would keep him out of the reach of the law, as evidenced by his remark that the Plaintiff "Go ahead, call the police." The purpose of punitive damages is to deter and punish exactly this attitude and conduct.

Further, while the attack itself lasted hours – during which time the Plaintiff fell in and out of consciousness, witnessed the Defendant raping her and her friend, and attempted but failed to escape – the ramifications for the Plaintiff are life-long. Even after seven years the Plaintiff continues to struggle. Ms. Doe suffers with PTSD, anxiety, and depression; has attempted suicide; has lost her job; medically withdrew from nursing school; and is haunted by the attack on a daily basis.

Accordingly, the record evidence establishes that an award of $1 million in punitive damages is proper.

## VI. Conclusion

For the foregoing reasons, the Plaintiff is to be awarded $1,250,000 in compensatory damages and $1,000,000 in punitive damages.

It is so ordered.

**New York, NY**
**October** *10* **, 2017**

_____
ROBERT W. SWEET
U.S.D.J.